**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**RICHARD MCALLISTER**                                                                          **PLAINTIFF**

**v.**                                               **4:08CV03619-WRW**

**LIFE INSURANCE COMPANY OF
NORTH AMERICA,** *et al*.                                                                   **DEFENDANTS**

**ORDER**

Pending are cross-Motions for Summary Judgment (Doc. Nos. 12, 17). The parties have responded to each motion.[1] For the reasons set out below, Plaintiff's Motion (Doc. No. 12) is GRANTED and Defendants' Motion (Doc. No. 17) is DENIED.

**I.     BACKGROUND**

Plaintiff worked for Molex Incorporated ("Molex") and participated in Molex's Long Term Disability Plan ("the Plan") which was insured by the Life Insurance Company of North America ("LINA").[2] To qualify for disability benefit, an employee must have a "disability" as defined in the Plan. The Plan reads, in part:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:
>
> 1.     unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative; or
>
> 2.     unable to earn 80% or more of his or her Indexed Covered Earnings.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:

---

[1]Doc. Nos. 18, 20.

[2]Doc. Nos. 14, 19.

      1.      unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or

      2.      unable to earn 80% of more of his or her Indexed Covered Earnings.[3]

From September 13, 1999, through January 16, 2003, Plaintiff worked as a "mold maker," a "medium occupation job."[4] In March, 2003, Plaintiff applied for long term disability ("LTD") benefits. On Defendants' Disability Questionnaire & Activities of Daily Living, Plaintiff indicated that he had become unable to work "because of the pain and medication."[5] According to Plaintiff, he was in pain from two lower back operations, a deteriorating disc, osteoarthritis, and pinched nerves.[6] Plaintiff also asserted that he was unable to concentrate because he takes 180 mgs of morphine daily for pain.[7] As evidence of his inability to concentrate, Plaintiff asserts that he injured his finger with a grinder while working and, on another occasion, caused "major damage" to molds.[8]

In an April 15, 2003, letter, Defendants informed Plaintiff that his claim for LTD benefits was approved. Plaintiff received LTD benefits from April 15, 2003, through August 15, 2007.[9]

In April, 2005, Defendants had Plaintiff take a Functional Capacity Evaluation ("FCE"). The FCE concluded that Plaintiff "demonstrated lifting in the sedentary category for an eight

---

[3] AR at 00650.

[4] The job required Plaintiff to occasionally lift 20-50 lbs, stooping, kneeling, crouching, fingering, and "frequent reaching, handling, proximity to moving mechanical parts." Doc. No. 17.

[5] AR at 01059.

[6] *Id.*

[7] AR at 01061.

[8] AR at 01059.

[9] Doc. Nos. 14, 19.

hour day."[10]  Defendants had Plaintiff take a second FCE in May, 2007, which determined that Plaintiff "demonstrated the ability to perform the Lifting activities at a Medium level . . . ."[11]

Defendants also hired a private investigator to observe Plaintiff's daily activities.  Based on observations from May 30, 2007, through June 1, 2007, the investigator reported:

> We have completed this portion of our investigation and have found the claimant to be somewhat active. On the first day, the claimant remained inactive throughout the day. On the second day, the claimant drove to his scheduled FCE appointment and then shopped at Wal-Mart. Afterwards, he eventually returned home. On the third day, the claimant remained inactive throughout the day. Specifically, we have obtained 10 minutes of film of the claimant as he drove his vehicle, walked and shopped inside of Wal-Mart. While he shopped, the claimant carried multiple items, bent at the knees, and kneeled on the ground.[12]

Defendants decided to deny Plaintiff's disability claim based on the 2007 FCE.[13] Defendants had a case manager conduct a "second eye review" on August 23, 2007, who agreed with Defendants' decision.[14]  In a September 4, 2007 letter, Defendants informed Plaintiff that he "no longer remain[ed] disabled as defined by [the] contract," because "the FCE revealed that you demonstrated the ability to perform . . . your own occupation as a Mold Changeover Tech."[15] Plaintiff appealed the decision.  In October, 2007, Plaintiff's treating physician, Dr. Burba, submitted a letter to Defendants that detailed his opinion and diagnosis.[16]

---

[10]AR at 00715.

[11]AR at 00553.

[12]AR at 00269.

[13]Doc. No. 17.

[14]AR at 00153.

[15]AR at 00265-00266.

[16]AR at 00259.

3

On January 3, 2008, Defendants decided to have an independent medical review performed. Dr. Van Fossen conducted an "independent medical review" of Plaintiffs' records on January 28, 2008. He recognized that the MRI in 2004 and 2005 both had "mild degenerative changes."[17] After restating Plaintiff's "brief clinical" and referenced the investigator's observations at Wal-Mart and the 2005 and 2007 FCE, Dr. Van Fossen summarily concluded that "[t]he restrictions and limitations are not supported by the documentation provided for review from 8/15/07 through present."[18]

In a February 5, 2008, letter, Defendants informed Plaintiff that it "must uphold the prior decision to deny Plaintiff's claim."[19] On September 10, 2008, Plaintiff filed the present case.

## II. DISCUSSION

### A. Standard of Review

Under ERISA, "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits . . . ."[20] A denial of benefits under a plan governed by ERISA is to be reviewed *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[21] When an ERISA plan grants discretion, courts review a plan administrator's decision under an abuse of discretion standard.[22] A plan administrator's decision will be reversed

---

[17]AR at 00248.

[18]AR at 00249.

[19]Doc. No. 17.

[20]29 U.S.C. § 1132(a)(1)(B).

[21]*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[22]*Jessup v. Alcoa*, 481 F.3d 1004, 1006 (8th Cir. 2007).

under an abuse of discretion standard "'only if it is arbitrary and capricious.'"[23]  When the insurance company "both determines whether an employee is eligible for benefit and pays benefits out of its own pocket," there is a conflict of interest, which should be taken into consideration when determining whether there was an abuse of discretion.[24]

The Plan reads: "No Disability Benefits will be paid, and insurance will end <u>if the Insurance Company determines</u> the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and the Employee refuses to do so without good cause."[25]    Although the language is weak, it appears to give LINA discretionary authority under the policy.  It also appears that LINA both determines eligibility for benefits and pays the benefits.

**B. Was the Plan Administrator's Decision Arbitrary and Capricious?**

As set out above, a plan administrator's decision will be reversed under an abuse of discretion standard "'only if it is arbitrary and capricious.'"[26] According to Webster's Dictionary, arbitrary means based on impulse or whim;[27] capricious means characterized by or subject to whim.[28]  A plan administrator's decision "need be only reasonable, meaning that it must be supported by substantial evidence."[29]  If a plan administrator's decision is based on relevant

---

[23]*Groves v. Metro. Life Ins. Co*., 438 F.3d 872, 874 (8th Cir. 2007) (quoting *Herbert v. SBC Pension Benefit Plan*, 354 F.3d 796, 799 (8th Cir. 2004)).

[24]*Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008).

[25]AR at 648 (emphasis added).

[26]*Groves*, 438 F.3d at 874.

[27]WEBSTER'S NEW RIVERSIDE DICTIONARY 37 (Revised Edition 1996).

[28]WEBSTER'S NEW RIVERSIDE DICTIONARY 106 (Revised Edition 1996).

[29]*Alexander v. Trane Co*., 453 F.3d 1027, 1031 (8th Cir. 2006).

evidence that a reasonable person could find supports the conclusion, the decision should be upheld.[30] However, [r]eview of an administrator's decision under an abuse of discretion standard, though deferential, is not tantamount to rubber-stamping the result."[31]

In this case, Defendants' decision is not supported by substantial evidence. The *only* evidence to support Defendants' decision is a 2007 FCE and observations by a private investigator; however, neither carries much weight. First, as Plaintiff points out, the private investigators observations are more favorable to Plaintiff than Defendants. Two of the three days Plaintiff was observed, he was inactive. On the one day he was active, it was to take a FCE, which had been scheduled by Defendants. The observations at Wal-Mart are far from convincing evidence that Plaintiff is not disabled. The fact that Plaintiff is capable of shopping for necessities at the store does not contradict the diagnosis of severe back pain, which, incidentally, are medicated with 160 mgs of morphine daily.

Defendants' decision to ignore the effect 180 mgs daily morphine might have on Plaintiff's ability to concentrate and work around dangerous equipment was arbitrary and capricious.[32] Clearly, Defendants understood the importance of considering the side effects of the medication, since in 2003, Defendants found: "given that [claimant] is on heavy meds which are causing him to be drowsy it is reasonable that he lacks the [functional capacity] to do his [occupation]"[33] and "could no longer do his job safely."[34] However, neither Dr. Van Fossen or

---

[30]See *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994 (8th Cir. 2005).

[31]*Torres v. UNUM Life Ins. Co. Of America,* 405 F.3d 670, 680 (8th Cir. 2005).

[32]*Id.* at 680-81 (finding the plan administrator's failure to consider the side effects of medicine prescribed to the claimant was unreasonable).

[33]AR at 00137.

[34]AR at 00143.

the FCE -- basically, the only evidence relied on by Defendants -- considered the morphine or its side-effects when determining if Plaintiff is capable of working.  (As an aside, I note that Dr. Van Fossen's opinion wasn't factored in until <u>after</u> Plaintiff's benefits were denied and the case was on appeal.  This means that Defendants had <u>only</u> the 2007 FCE to support their initial decision to deny benefits).  There is no evidence in the record to contradict Plaintiff's assertions that his medications affected his ability to concentrate and perform his job.  In fact, the evidence was that on at least two occasions the medication adversely affected Plaintiff job performance -- injuring his finger with a grinder and improperly installing molds.

Defendants' assertions that the medical records do not support a determination of disability are without merit.  For example, Defendants recognized in 2003 that "given [claimant's] symptoms and heavy medication it is reasonable that [claimant] would lack functional capacity to perform his occ of a mold maker."[35]  "His symptoms of pain and side effects of the medication do support his diagnosis."[36] In fact, Defendants held this position as late as May, 2005, when it "determined that [Plaintiff] continues to remain disabled as defined by [his] contract."[37]

It seems to me that Defendants, at best, were merely going through the motions when reviewing Plaintiff's case.  For example, in the independent medical review, Dr. Van Fossen gave no analysis or explanation for his findings and failed to consider the effects Plaintiff's medication might have on his work (just as the 2007 FCE failed to consider the effects of the medication). Other than the 2007 FCE, there is nothing in the record to indicate that any of

---

[35]AR at 00136.

[36]AR at 00144.

[37]AR at 00183.

Plaintiff's medical conditions improved -- and, again, the 2007 FCE ignores that fact that Plaintiff is taking 180 mgs of morphine daily. Based on the record, there was no relevant evidence that would permit a reasonable person to side with Defendants' conclusion. This lack of relevant evidence along with Defendants' conflict of interest under *Glenn* lead to only one conclusion: Defendants abused their discretion when denying Plaintiff's claim.

## CONCLUSION

Because the plan administrator's decision was arbitrary and capricious, the decision should not be upheld. Accordingly, Plaintiff Motion for Summary Judgment (Doc. No. 12) is GRANTED and Defendants' Motion for Summary Judgment (Doc. No. 17) is DENIED.

IT IS SO ORDERED this 7th day of May, 2009.

/s/ Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE